UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-452-FDW

| OBADIAH DOCTOR, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, ET AL., | ) ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 15), and on his motion for entry of default judgment, (Doc. No. 18). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 6).

**I. BACKGROUND**

*Pro se* Plaintiff Obadiah Doctor has filed a civil rights suit pursuant to 42 U.S.C. § 1983 against the following in their official and individual capacities: Lanesboro Correctional Institution ("CI") Superintendent David Mitchell, Assistant Superintendent Ken Beaver, Unit Manager Dennis Marshall, Sergeant C. Parker, Corrections Officers Melin and Hoyle, and Nurse Harris.

Liberally construing the Amended Complaint and accepting the allegations as true, Plaintiff, who is wheelchair-bound, was escorted from his cell at around 9:00 AM for a disciplinary hearing on February 10, 2014. He was placed in his hallway's holding cage in full restraints. He was talking and joking with a nurse when Parker came to the hallway and yelled at Plaintiff to stop talking. Plaintiff responded he does not like Parker and was not going to shut up. Parker said he is tired of Plaintiff's mouth and told Melin to help take Plaintiff where he needs to go and get him

1

back to his cell. (Doc. No. 15 at 4). Parker and Melin got Plaintiff out of the holding cage and Parker began pushing Plaintiff's wheelchair forcefully and intentionally bumped Plaintiff into each doorway on the way to the disciplinary hearing room. Plaintiff became angry and exchanged words with Parker.

As Plaintiff was being escorted back to his cell by Parker and Melin, Marshall came out of his office and said "There you go! Since you want to squirt people with shit back there, I got something for you." (Doc. No. 15 at 4). Plaintiff thinks Marshall was angry with Plaintiff for harassing another inmate who wrote to the superintendent stating the shift officers kept allowing it to happen and did nothing. (Doc. No. 15 at 5).

Back in the cell, Parker acted like he could not get one of Plaintiff's leg shackles off and intentionally scraped Plaintiff's ankle and leg. Plaintiff became agitated, said he knew what Parker was trying to do and did not want Parker touching him, and asked Melin to release his restraints. Plaintiff turned towards Melin and moved his leg towards her as she moved towards Plaintiff. Parker said "No! I got it" and snatched the shackle which lifted Plaintiff's leg straight up and flipped him out of his wheelchair, causing him to hit his head on the side of his cell door. (Doc. No. 15 at 6). Parker wrapped the shackle chain around Plaintiff's leg and placed Plaintiff in an ankle lock as if trying to break it, before throwing his leg down. Melin stood back and watched as Plaintiff cried out. Plaintiff tried to roll out of his wheelchair but Parker grabbed his shirt and forcefully pushing him down. (Doc. No. 15 at 7). Parker called for staff assistance and Officer Sturdivant was the first to arrive. Parker told Sturdivant to finish taking Plaintiff out of restraints and put him back in his cell.  Marshall arrived with Hoyle and yelled to "pick his ass up and bring him to the hallway" and to leave the wheelchair. (Id.). Parker picked up Plaintiff by his dreadlock/arm, Hoyle picked him up by his legs, and they threw him into a hallway holding cage

2

in full restraints. Parker ripped out three of Plaintiff's dreadlocks and threw them in Plaintiff's face before closing the door.

Plaintiff had severe pain in his leg, back, arms and neck so he began yelling for a nurse. Nurses Julius and Harris came out of their room and Julius asked what happened. However, Marshall told the nurses to "ignore him" and instructed Parker and Hoyle to removed Plaintiff from his hallway. Parker and Hoyle carried Plaintiff outside to the recreation yard, threw him on the ground, kicked and spit on him, and left him there. (Doc. No. 15 at 8). Plaintiff was left face-down on the ground in full restraints for approximately two hours. During that time, Harris came outside with Officer Sturdivant to observe Plaintiff through the gate while Plaintiff was on the ground in pain. Harris refused to have Sturdivant open the gate. Despite Plaintiff's complaints of pain and need of medical attention, Harris stated "you look alright to me" and left. (Id.). Later Sturdivant came to get Plaintiff with his wheelchair and took him back to his cell. Plaintiff was forced to stay in full restraints 48 hours and, during the first 24 hours, he was not given a two-hour break pursuant to policy. No use-of-force policy reporting was used that would have included pictures, a medical examination, and Plaintiff's statement.

Plaintiff's personal property including headphones, hygiene products, magazines, legal and personal mail, family pictures, and books, was seized and scattered all over an empty office floor in the hallway. (Doc. No. 15 at 8-9). Defendants failed to complete a DC-160 inmate inventory sheet pursuant to policy.

When Plaintiff was let out of full restraints a couple days later, he attempted to hang himself. He was sent to medical where he was placed on observation and told mental health what had happened and who was responsible for his sudden anxiety and depression. (Doc. No. 15 at10). After Plaintiff was released he wrote a sick call request explaining his pain for use of force. Dr.

Hasan ordered a muscle relaxer for Plaintiff's pain and some x-rays. Parker was working the day Plaintiff was supposed to get his x-rays done, and Plaintiff told Parker he did not want Parker touching him. Marshall came out and said "that's a refusal" so Plaintiff never received his x-rays. (Doc. No. 15 at 10).

Marshall and Parker continued harassing Plaintiff and refused to give him his personal property. Two weeks later, Plaintiff overdosed and tried strangling himself. He was put on medical observation for nine days. Plaintiff's psychologist told Plaintiff that he did not want Plaintiff to go back to the unit with so much going on so he sent Plaintiff to Central Prison's mental health where he stayed for six months.

Plaintiff seeks declaratory judgment, nominal, punitive, and compensatory damages, costs, and any additional relief the Court deems just, proper and equitable.

## II. DEFAULT JUDGMENT

Plaintiff has filed a "Declaration for Entry of Default Judgment," (Doc. No. 18), in which he argues that the Defendants were served in January 2017, and have failed to respond. Contrary to Plaintiff's contention, no defendants have yet been served. His motion for default judgment is therefore denied.

## III. STANDARD OF REVIEW

A "court shall dismiss [a prisoner's] case at any time if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d

726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

**IV.     DISCUSSION**

**(1) Unnamed Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption

5

and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Amended Complaint Contains mentions individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders any allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Plaintiff is granted leave to file a Second Amended Complaint within 14 days of this Order by properly naming any individuals against whom he intends to proceed in the caption in compliance with Rule 10(a).[1]

**(2) Supervisors**

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk

---

[1] The Court expresses no opinion about the timeliness, procedural viability, or merit of any such Second Amended Complaint.

of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff asserts that Superintendent David Mitchell and Assistant Superintendent Ken Beaver, who are legally responsible for operation of the prison and the welfare of its inmates, were deliberately indifferent to Marshall and Parker's illegal actions by failing to correct, and encouraging, the misconduct which violates the Eighth Amendment.

First, Plaintiff does not allege that either Mitchell or Beaver was directly involved in the incidents at issue and that, acting under color of state law, personally deprived him of a federal right. Therefore he has failed to state a basis for personal liability. See, e.g., Armstrong v. City of Greensboro, 190 F.Supp.3d 450, 466 (M.D.N.C. 2016) (plaintiff failed to state an individual capacity claim against former police chief because "[m]ere allegations about the environment or generalized encouragement do not rise to the level of alleging a direct connection between [former police chief] and the constitutional violations.").

Second, Plaintiff has failed to state that the alleged constitutional deprivations occurred as a result of a policy or custom by Mitchell and/or Beaver. Therefore, he has failed to state a basis for liability in these Defendants' official capacities. See, e.g., Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) ("Ordinarily, [a plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents."); Simmons v. Corizon Health, Inc., 136 F.Supp.3d 719, 722 (M.D.N.C. 2015) (plaintiffs failed to state an official capacity claim against sheriff because a "single, isolated incident is not sufficient to establish a policy or custom….").

Third, Plaintiff's vague and conclusory allegations are insufficient to state a claim for

7

supervisory liability. He does not allege that either Mitchell or Beaver knew that Parker and Marshall were engaging in conduct that posed a pervasive and unreasonable risk of injury, that their response to this risk was deliberately indifferent, or that there was a causal link between the inaction and Plaintiff's injury. Therefore, he has also failed to state a sufficient claim for supervisory liability against these Defendants. See, e.g., Bradshaw v. Harden, 401 Fed. Appx. 805, 806 (4th Cir. 2010) (affirming dismissal of Eighth Amendment claim against correctional center's supervisory officials where prisoner failed to allege any facts that would have put defendants on notice that the prison policy was being violated and therefore he could not show that the supervisors were deliberately indifferent to, or had tacitly authorized the conduct of, their subordinates); see also Gandy v. Robey, 520 Fed. Appx. 134, 143 (4th Cir. 2013) (affirming summary judgment where no triable issue existed with regards to a sergeant's supervisory liability because plaintiff failed to identify what evidence, if any, she proffered to show that the sergeant's subordinates were engaged in widespread unconstitutional conduct by using lethal force under circumstances where the suspect posed no threat or that he was aware but deliberately indifferent to that conduct).

The claims against **Mitchell** and **Beaver** are, therefore, dismissed.

**(3) Excessive Force**

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 1 (1992). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be objectively "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities,"

Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act ... coupled with a duty to act." Randall v. Prince George's County, 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's County, 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009).

Plaintiff alleges that Parker used excessive force by flipping him out of his wheelchair, kicking, punching, ankle lock, snatching dreads while he was in full restraints, that Marshall failed

9

to correct and encouraged Parker's misconduct, and that Melin and Hoyle failed to intervene.

These allegations are sufficient to state a claim for excessive force against Defendants **Parker, Marshall, Melin**, and **Hoyle**.

### (4) Deliberate Indifference to a Serious Medical Need

As the Supreme Court has explained, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted); see Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013) ("the Eighth Amendment's prohibition against 'cruel and unusual punishments' [extends] to the treatment of prisoners by prison officials," and "forbids the unnecessary and wanton infliction of pain.") (internal quotation marks omitted).

The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008); see Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective."). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson

v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). A mere delay or interference with treatment can be sufficient to constitute a violation of the Eighth Amendment. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). However, allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."); see Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), *aff'd*, 535 F.2d 1250 (4th Cir. 1976) ("even if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention.").

Plaintiff alleges that Defendants Harris and Marshall were deliberately indifferent to a serious medical need by withholding medical treatment after he was beaten, and that Marshall prevented him from receiving a prescribed x-ray when Plaintiff objected to Parker's involvement in the procedure. The claims that **Harris** and **Marshall** purposefully deprived him of needed medical care are facially sufficient to state a claim for medical deliberate indifference and will be allowed to proceed.

 **(5) Deprivation of Property**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474

U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff appears to allege that his property loss resulted from a random, unauthorized action rather than an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support this claim. See, e.g., Smith v. Ledford, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), *aff'd,* 203 Fed. Appx. 484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-deprivation remedy for conversion).

Therefore, Plaintiff's claim for the loss of his personal property is dismissed.

V. **CONCLUSION**

For the reasons stated herein, the Court finds that the case should proceed against Defendants Marshall, Parker, Melin, and Hoyle for the use of excessive force, and against Marshall and Harris for deliberate indifference to a serious medical need. The remaining claims, including those against Defendants Mitchell and Beaver, are dismissed for failure to state a claim upon which relief can be granted. In addition, Plaintiff may file a Second Amended Complaint within 14 days

of the issuance of this Order to add parties to the caption in accordance with Rule 10(a) of the Federal Rules of Civil Procedure.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's Motion for entry of default judgment, (Doc. No. 18), is **DENIED**.

2. Plaintiff's claims of excessive force against Defendants Marshall, Parker, Melin, and Hoyle, and his claims of deliberate indifference to a serious medical need against Marshall and Harris, survive initial review under 28 U.S.C. § 1915(e).

3. The remaining claims, including those asserted against Defendants Mitchell and Beaver, are dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4. Plaintiff is granted leave to file a Second Amended Complaint within 14 days to add individuals not presently named as Defendants in the case caption.

5. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **Marshall, Parker, Melin, Hoyle,** and **Harris**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: September 29, 2017

Frank D. Whitney
Chief United States District Judge